## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CASSIE D. TACKETT,

                **Plaintiff,**                **CIVIL ACTION NO. 09-13803**

      **vs.**                     **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 16) be **DENIED**, Plaintiff's Motion for Summary Judgment or Remand (docket no. 11) be **GRANTED**, and the case by **REMANDED** for further proceedings consistent with this Report.

**II.**    **PROCEDURAL BACKGROUND**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on January 15, 2004. (TR 40). The Social Security Administration denied benefits on March 9, 2004. (TR 16). The record does not indicate that Plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ").

On October 5, 2004 Plaintiff filed a new application for a period of disability and DIB based on an onset date of disability of July 6, 2001. (TR 43). The Social Security Administration denied benefits on April 14, 2005. (TR 28-32). Plaintiff requested a hearing and subsequently amended her disability onset date to November 15, 2004. (TR 486). On April 18, 2007 ALJ Mary Connolly

1

held a de novo hearing and found that the Plaintiff was not entitled to a period of disability or DIB because she was not under a disability within the meaning of the Social Security Act from the onset date of disability through the date of the ALJ's May 23, 2007 decision. (TR 16-24). The ALJ also determined that there was no basis under 20 C.F.R. § 404.988 or Social Security Ruling ("SSR") 91-5p to reopen or reconsider the decision on Plaintiff's January 15, 2004 application. (TR 16). The Appeals Council declined to review the ALJ's decision and the instant action for judicial review ensued. Plaintiff filed a Motion for Summary Judgment or Remand wherein the issues include whether Plaintiff has shown cause to remand this case for consideration of newly submitted evidence pursuant to sentence six of 42 U.S.C. § 405(g) and whether the ALJ's decision denying benefits is supported by substantial evidence on the record.[1] (Docket no. 11). Defendant also filed a Motion for Summary Judgment. (Docket no. 16).

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony and Reports

---

[1]Plaintiff contends in her Motion for Summary Judgment or Remand that she filed applications for DIB and Supplemental Security Income ("SSI") on January 7, 2003, and argues that ALJ Mary Connolly's May 23, 2007 decision denying her claims to DIB and SSI benefits is not supported by substantial evidence. (Docket no. 11; TR 50-59). In order to be eligible for SSI benefits a person must file an application for such benefits on a form prescribed by the Social Security Administration ("SSA"). 20 C.F.R. § 416.202(g), 20 C.F.R. § 416.305, 20 C.F.R. § 416.310. An application for SSI is not in the record. At the April 2007 hearing before the ALJ on the issue of Plaintiff's benefits, the ALJ asked Plaintiff's representative if he understood that Plaintiff's claim was a DIB claim only. (TR 487). Plaintiff's representative responded in the affirmative, stating that he preferred that Plaintiff's application be construed as a DIB claim only. (TR 487). A Field Office Disability Report, Form SSA-3367, dated March 2004 also reveals that "there is no SSI claim on this case." (TR 76). The ALJ did not discuss any claim for SSI benefits during the April 2007 hearing or in her written decision. (TR 16-24, 483-512). Plaintiff did not assign error to this omission in her Motion for Summary Judgment or Remand. (Docket no. 11 at 10). In light of these facts, the Court will limit its review to period of disability and DIB benefits, as did the ALJ.

Plaintiff was twenty-six years old on the amended alleged onset date of disability.  (TR 18).

Plaintiff completed the twelfth grade and was reportedly enrolled in special education classes.[2]  (TR

95).  At the time of her benefits application Plaintiff was separated from her husband.  (TR 45).

Plaintiff is the primary caregiver to her two minor children who live with her in a two-story

condominium.  (TR 159, 488, 503-504).  She has past work as a cashier, stock person, security

guard, and cook.  (TR 60, 508).

Plaintiff testified that she has lower back pain since 2001, sciatica, a heel spur in her right

foot, anxiety, and depression.  (TR 491).  She testified that she has difficulty standing and walking

and is in constant pain from her heel spur.  (TR 493).  On a scale of ten, Plaintiff described her

combined pain from her back and heel spur as a level eight.  (TR 493, 497).  Plaintiff testified that

she receives cortisone shots in her right foot every two weeks which provides some relief.  (TR 493-

95).  She testified that she elevates her leg, soaks her foot in hot water, uses the topical application

Icy Hot, spends a lot of time in bed, applies back patches, and takes Motrin and Tylenol to alleviate

her physical pain.  (TR 493-94, 497-98).  Plaintiff states that she has not had consistent treatment

for back pain because of insurance and transportation issues.  (TR 498).  Plaintiff suffers from

depression and anxiety and attributes this to difficulties she has with her estranged husband and

neighbors, the stress of raising young children, and the pressure of handling finances and other

matters on her own.  (TR 499).  When asked to describe what she experiences when she feels

---

[2]Plaintiff's score on a Wechsler Adult Intelligence Scale Test administered prior to the amended alleged date of onset of disability placed her in the average intelligence range with a full scale I.Q. score of 100.  (TR 159).  Her score on a Wide Range Achievement Test-III established that she could read at a high school level.  (TR 159).  The record does not contain Plaintiff's special education records or indicate why she was enrolled in special education classes.  Plaintiff was also unable to explain why she was in a special education program.  (TR 159).

3

depressed, Plaintiff testified that she doesn't feel happy and believes at times that the world is against her. (TR 500-501). She reports that these feelings have improved slightly with psychiatric therapy. (TR 501). Plaintiff takes Wellbutrin, Prozac, Ativan, and Topamax for her emotional issues. (TR 501-502).

Plaintiff is able to take care of her own personal hygiene and dressing. She performs daily child rearing and household duties including getting her children ready for school, walking her son to the bus stop, preparing meals, cleaning the house, shopping, picking up after the children, and bathing the children. (TR 97, 107). Plaintiff reports that she feeds her cats and cleans the litter box. (TR 107). She also feeds her fish and cleans the fish tank. (TR 107). She testified that she has difficulty keeping the kids' toys picked up because it hurts to bend over and the kids' bedrooms are on the second floor, separated from the first floor by a fourteen step staircase. (TR 233, 506-507).

Plaintiff has a driver's license and drives, although the record indicates that she does not have a car and has transportation issues. (TR 71). Plaintiff has difficulty getting to the grocery store because she has a hard time walking and does not have transportation. (TR 505-506). She testified that her brother stays with her on the weekends and plays with the kids and helps straighten up their things. (TR 507). She testified that her other brother takes her shopping and helps with the laundry. (TR 507). Plaintiff's neighbor also helps with the children when needed. (TR 507).

**B.     Medical Evidence**

**1.     Treatment for Physical Impairments**

The Court has reviewed in full the records in this matter. The record shows that Plaintiff was seen at the Oakwood Health Center in March 2002 by Dr. Higoo Kim for treatment of right-sided pain in her lower back, radiating to her right leg, hip, and knee. (TR 210). Dr. Kim diagnosed

Plaintiff with a right sacroiliac sprain and recommended that she attend physical therapy sessions. (TR 210).  In April 2002 Dr. Kim reevaluated Plaintiff and found that her right sacroiliac sprain and back pain were improving with physical therapy.  (TR 213).  Physical therapy notes dated March 2002 to May 2002 verify that Plaintiff's condition improved with physical therapy, and reveal that Plaintiff experienced a ninety percent improvement overall with a reported pain level on discharge of 1 on a scale of 10.  (TR 211-212, 214-220).

On November 15, 2004 Plaintiff was again evaluated by Dr. Kim for recurrent back pain. (TR 392).  Dr. Kim observed that Plaintiff was an obese woman in no acute distress, with moderate tenderness in the right sacroiliac junction and limited range of motion of the lumbosacral spine.  His impression was that Plaintiff's pain was related to a right sacroiliac sprain.  Dr. Kim recommended physical therapy and an x-ray of the lumbosacral spine and sacroiliac joint to rule out lumbar radiculopathy.  (TR 392).  The record does not contain x-ray reports of Plaintiff's spine or physical therapy notes following this visit.  Plaintiff saw Dr. Kim again on December 13, 2004.  (TR 391). Physical examination revealed minimal to moderate tenderness in the right sacroiliac junction with limited range of motion.  Dr. Kim recommended continued physical therapy and injection treatment. The record does not contain physical therapy records following this examination, but shows that Plaintiff declined Dr. Kim's recommendation for injection treatment.  (TR 391).

On February 26, 2005 Plaintiff was examined by Dr. Babu Lal Nahata for back pain and learning disability at the request of the Michigan Disability Determination Service ("DDS").  (TR 233-235).  Plaintiff reported a pain level of six on a scale of ten.  Dr. Nahata noted Plaintiff's past history of morbid obesity and depression.  On examination Plaintiff had mild back spasm associated with mild tenderness.  (TR 234).  Plaintiff's lumbar spine range of motion was mostly within

5

functional limits, with normal range of motion in hip and ankle joints. (TR 234). Dr. Nahata opined that Plaintiff was able to sit for not more than an hour, stand not more than 10 to 15 minutes, bend with difficulty, carry, push, and pull not more than 10 pounds, squat, and climb approximately two stairs. (TR 235). His clinical impression was that Plaintiff had a history of chronic lower back pain with chronic lumbar strain and spasm, bilateral knee degenerative osteoarthritis, mild left handgrip strength weakness, with a history of depression and morbid obesity. (TR 235). On June 16, 2005 Plaintiff underwent an x-ray of her right knee which was normal. (TR 371).

On December 13, 2005 Plaintiff was evaluated by Dr. Fallet related to complaints of right foot pain. (TR 386, 492-93, 496). She was diagnosed with right plantar fasciitis with a calcaneal spur, and was given a trigger point injection. (TR 386). Plaintiff was subsequently treated for heel pain approximately eleven times between December 13, 2005 and December 28, 2006 and received approximately nine trigger point injections, sometimes with lapses as long as five months between treatments. (TR 406-417). She received a prescription for Motrin for pain relief. (TR 406). An x-ray of Plaintiff's foot taken December 5, 2006 showed evidence of a prominent plantar calcaneal spur. (TR 273). On December 14, 2006 a slipper cast was applied to immobilize the plantar fasciitis. (TR 407).

In March 2006 Plaintiff sought treatment for headaches from Dr. Vijayakumar at which time Plaintiff was diagnosed with intractable migraine headaches possibly associated with her antidepressant medication. (TR 380-81). Plaintiff was given a prescription for Topamax. CT scans of Plaintiff's head done with and without contrast in April 2006 were negative. (TR 302). A follow-up visit with Dr. Vijayakumar on July 17, 2006 shows that Plaintiff still suffered from migraine headaches but had improved. (TR 298).

6

2.      **Treatment for Mental Impairments**

On March 21, 2005 Plaintiff began treatment at the Eastwood Clinic for depression and

suicidal ideations.  (TR 424-25).  An Intake Assessment Form reports that the Plaintiff was

experiencing confusion, poor memory, racing thoughts, suicidal ideations, inability to concentrate,

crying spells, hopelessness, and sleeplessness.  (TR 424).  The assessment reveals that Plaintiff

attempted suicide in 1998,was physically and verbally abused by her children's father, and was

having significant challenges in her relationships with her estranged husband and his brother.

Plaintiff was diagnosed with major depressive disorder and assigned a Global Assessment of

Functioning ("GAF") of 50.  (TR 425).  The record reveals that Plaintiff continued receiving mental

health treatment from Eastwood Clinic from March 2005 to approximately March 2007.  (TR 424-

69).  On May 25, 2005 Dr. Kanchana Madhavan of Eastwood Clinic conducted a psychiatric

evaluation which reveals that Plaintiff presented with depressed mood, angry spells, feelings of

hopelessness, poor energy, suicidal ideations, and chronic back pain.  (TR 431).  Dr. Madhavan

observed that Plaintiff was coherent, fluent, cooperative, and pleasant, with logical and goal-directed

thoughts.  (TR 434). Dr. Madhavan diagnosed Plaintiff with dysthymia and major depressive

disorder at Axis I, deferred on Axis II, noted obesity at Axis III, identified financial and relationship

stress with her children's father at Axis IV, and documented a GAF of 45 at Axis V.  (TR 435).

On March 25, 2005 Plaintiff underwent a psychiatric evaluation by Dr. R. Hasan at the

request of the DDS.  (TR 241-44).  Plaintiff reported experiencing depression, crying spells, mood

swings, and suicidal ideations since she separated from her husband.  She also reported feeling

paranoid after being robbed by her neighbor.  (TR 242).  Dr. Hasan observed that Plaintiff's self-

esteem and motor activity were low, but that she had some motivation and insight, her speech was

logical, and her contact with reality was intact.  (TR 242-43).  He diagnosed Plaintiff with post-traumatic stress disorder, rule out major depressive disorder, learning disability, and a GAF of 60. (TR 243).

On April 5, 2005 a state agency psychologist reviewed the file and concluded that Plaintiff was mildly restricted in activities of daily living and maintaining social functioning, moderately limited in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (TR 246-63).  On April 15, 2005 Plaintiff was taken to Oakwood Heritage Hospital Emergency Room with complaints of depression and suicidal ideations.  (TR 286).  She was transported to the hospital emergency room again in July 2005 after she intentionally overdosed on Ativan.  (TR 277).

On February 28, 2007 Dr. Madhavan completed a Mental Residual Functional Capacity Assessment in which he opined that Plaintiff had marked limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, and complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  (TR 421-22).  In all other categories, Dr. Madhavan concluded that Plaintiff was moderately or not significantly limited. (TR 421-22).  By way of explanation, Dr. Madhavan wrote that "Plaintiff has chronic pain which affects her mental and emotional functioning.  As her stress levels [increase] due to poor pain tolerance, [Plaintiff] decompensates mentally and emotionally. . . . As physical pain [increases] the above mention[ed] [signs and symptoms increase] also."  (TR 423).

## C.    Vocational Expert

The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who was limited to simple, unskilled, sedentary work with mild deficits in concentration,

persistence, and pace.  (TR 508).  The VE testified that such an individual could not perform Plaintiff's past relevant work, but that various assembly positions (3,000 jobs in the local economy), surveillance monitor (2,000 jobs), inspection positions (2,000 jobs), and hand packager positions (2,000 jobs) existed in Southeastern Michigan that such an individual could perform.  (TR 509).

The ALJ added the additional limitation that the individual needs to lie down or prop one leg during unscheduled intervals throughout the day to alleviate pain.  (TR 509).  The VE testified that these limitations would be work preclusive.  (TR 509).  When asked by Plaintiff's representative to add to the first hypothetical that the individual has a marked problem with the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace, the VE testified that a marked limitation would be work preclusive. (TR 510).  The VE further testified that if the individual had a moderate impairment in her ability to concentrate and attend to tasks she could perform the jobs previously listed.  (TR 510).

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff meets the insured status requirements through March 31, 2007, has not engaged in substantial gainful activity since her amended alleged onset date, and suffers from a history of back pain, a history of headaches, a history of knee and ankle pain, obesity, depression, and anxiety, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 16-24).  The ALJ found that Plaintiff has the residual functional capacity to perform a limited range of simple, unskilled, sedentary work activity with mild limitations in concentration, persistence, and pace.  (TR 19-20). The ALJ found that as a result

9

of Plaintiff's 12.05 Mental Retardation[3] and 12.06 Anxiety-Related Disorders, Plaintiff has mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (TR 23). The ALJ found that Plaintiff is not able to perform her past relevant work. The ALJ further found that Plaintiff was twenty-six years old as of the amended alleged disability onset date, and at all times relevant to her claim was classified as a younger individual. (TR 23). The ALJ determined that Plaintiff has a high school education, can communicate in English, and concluded that the transferability of job skills was not material to a disability determination. (TR 23). Finally, the ALJ found that the Plaintiff is able to perform a significant number of jobs in the economy and concluded that Plaintiff is not suffering from a disability under the Social Security Act. (TR 23-24).

## V.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.

---

[3]It is not clear why the ALJ references Listing 12.05 Mental Retardation, which refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period. The record shows that an April 5, 2005 psychiatric review technique checked 12.05 Mental Retardation solely on the basis of a reported learning disability and indicated that Plaintiff's mental impairment of learning disability did not precisely satisfy any of the diagnostic criteria for the listing. (TR 250, 254). Various other medical reports refer to the fact that Plaintiff was in special education classes in school. However, there are no educational records and no other objective or clinical diagnostic medical evidence in the record that support a finding of mental retardation under Listing 12.05.

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir.1981). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence it must be affirmed, even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983).

## B.    Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir.1999). To meet this burden,

11

the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Id.* (citations and internal quotation marks omitted).

**C.    Analysis**

Plaintiff asks that the case be remanded for consideration of new evidence pursuant to 42 U.S.C. § 405(g) and argues that the ALJ's decision is not based upon substantial evidence because the ALJ failed to give proper weight to Plaintiff's treating psychiatrist, made an improper credibility finding, relied on an incomplete hypothetical leading to an erroneous step five finding, and ignored conflicting testimony from the VE and failed to question the VE regarding whether testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Plaintiff also argues that the ALJ failed to consider the combined effect of Plaintiff's impairments when determining that Plaintiff was capable of full-time work. (Docket no. 11 at 14).

**1.    Whether Dr. Madhavan's July 10, 2007 Letter Is New Evidence Requiring Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g)**

Plaintiff argues that the Court should remand her claim for consideration of a letter written by Dr. Madhavan, Plaintiff's Eastwood Clinic psychiatrist, and sent to the Appeals Council subsequent to the ALJ's decision which purports to clear up a misconception concerning Plaintiff's condition. Plaintiff avers that the ALJ attributed little weight to Dr. Madhavan's February 28, 2007 opinion because she relied upon an inaccurate comment written on Plaintiff's March 21, 2005 Intake Assessment Form. The Intake Assessment Form lists as one of Plaintiff's objectives that Plaintiff

12

would follow through with the social security disability process.  (TR 425).  At the bottom of the

Intake Assessment Form is the following comment written by an Eastwood Clinic supervisor:

disability "is a long shot for someone so young with no physical symptoms."  (TR 425).  The ALJ

noted the supervisor's comment in her decision, contrasted the comment against Dr. Madhavan's

remarks that Plaintiff's mental and emotional condition were related to her chronic pain, and

attributed only limited weight to the February 28, 2007 conclusions of Dr. Madhavan.  (TR 22).

In the instant motion Plaintiff argues that Dr. Madhavan's July 10, 2007 letter is new and

material evidence that reveals that the March 21, 2005 Intake Assessment Form is inaccurate

because it fails to include that Plaintiff is suffering from chronic pain.  (TR 474).  Dr. Madhavan's

letter states that the supervisor's comment that disability is a long shot for someone so young with

no physical symptoms is inaccurate given the documentation of the client's chronic pain in her

personal history.  (TR 474).  Plaintiff contends that had the ALJ reviewed the letter before making

her decision, she would not have discounted Dr. Madhavan's opinion and would likely have reached

a different conclusion on the disability claim.

Pursuant to sentence six of 42 U.S.C. § 405(g) the court may not review evidence submitted

to the Appeals Council after the ALJ's decision, but may remand a case for consideration of new

evidence upon a showing that the evidence is new and material and "that there is good cause for the

failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g);

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001).  For purposes of a sentence six remand,

"evidence is new only if it was 'not in existence or available to the claimant at the time of the

administrative proceeding.' " *Id.* (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

"[E]vidence is 'material' only if there is 'a reasonable probability that the Secretary would have

13

reached a different disposition of the disability claim if presented with the new evidence.' " *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).  The party seeking remand has the burden of showing that it is warranted.  *Id.*

The content of Dr. Madhavan's letter is cumulative of other evidence in the record and does not consist of new evidence.  The record is replete with references to Plaintiff's physical condition and includes among other things a May 2005 psychiatric evaluation by Dr. Madhavan in which he documents Plaintiff's chronic back pain, and a June 2006 Eastwood Clinic treatment note which establishes "treating Plaintiff's physical health" as one of Plaintiff's treatment goals.  (TR 427, 431).  Dr. Madhavan's letter itself recognizes that Plaintiff's history of pain was documented in her personal history and psychiatric evaluation.  (TR 474).  The ALJ was aware that Plaintiff suffered from physical impairments including a history of pain.  Therefore, had the ALJ been given the opportunity to review Dr. Madhavan's letter before issuing her decision, it is unlikely that she would have reached a different disposition of the disability claim.  Plaintiff has not persuaded the Court that there is a reasonable probability that Dr. Madhavan's letter would change the ALJ's decision.  Therefore, Plaintiff's request for remand under sentence six of the Social Security Act should be denied.

**2.     Whether the ALJ Failed to Consider the Combined Effect of Plaintiff's Impairments**

Plaintiff asserts an undeveloped argument that the ALJ failed to consider the combined effect of Plaintiff's impairments when determining that Plaintiff was capable of full-time work.  (Docket no. 11 at 14).  The ALJ found that Plaintiff suffers from a combination of mental and physical impairments, including a history of back pain, a history of headaches, a history of knee and ankle pain, obesity, depression, and anxiety.  (TR 18).  The opinion shows that the ALJ considered

14

evidence of Plaintiff's objective physical impairments, her subjective assessments of pain, her cognitive impairments, her depression and anxiety, and whether Plaintiff's impairments could reasonably be expected to produce Plaintiff's symptoms. (TR 19-23). The ALJ recognized that she must take into consideration whether Plaintiff's obesity alone or in combination with other impairments significantly limits Plaintiff's physical or mental ability to perform basic work activities. (TR 19). Furthermore, the ALJ's opinion clearly states that she considered all of the Plaintiff's symptoms and the evidence of record in reaching her decision. (TR 19-23).

The record reflects that the ALJ considered the combined effects of Plaintiff's impairments, and Plaintiff has not shown otherwise. Accordingly, Plaintiff's claim that the ALJ failed to consider the combined effects of her impairments should be denied.

**3.     Whether The ALJ Gave Proper Weight To The Treating Physician's Opinion**

Plaintiff argues that the ALJ misread Dr. Madhavan's treatment notes and as a result failed to accord proper weight to his February 28, 2007 opinion. Specifically, Plaintiff argues that the ALJ concluded that Dr. Madhavan attributed Plaintiff's mental and emotional condition to chronic pain when in fact Dr. Madhavan believed Plaintiff's mental impairments were independent of her physical impairments. (Docket no. 11 at 13). Plaintiff further argues that the ALJ ignored the significance of Plaintiff's GAF score of 50 and chose instead to rely upon a GAF found by a one-time examiner. (Docket no. 11 at 14).

Ordinarily the opinion of a treating physician should be accorded greater weight than that of a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d); *Walters*, 127 F.3d at 529-30. A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not

inconsistent with the record.  20 C.F.R. § 404.1527(d)(2).  "The ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation," or where there is substantial evidence to the contrary.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001) (citation and internal quotation marks omitted); *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1308 (6th Cir.1990) (citation omitted).

As previously discussed, Dr. Madhavan's February 28, 2007 Mental Residual Functional Capacity Assessment determined that Plaintiff had marked limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, and complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace.  (TR 421-22).  In all other categories, Dr. Madhavan found that Plaintiff was moderately or not significantly limited.  (TR 421-22).  In his explanation of his findings, Dr. Madhavan wrote that Plaintiff has "chronic pain which affects her mental and emotional functioning. As her stress levels [increase] due to poor pain tolerance, [Plaintiff] decompensates mentally and emotionally. . . . As physical pain [increases] the above mention[ed] [signs and symptoms increase] also."  (TR 423).

The ALJ thoroughly reviewed the medical records and interpreted Dr. Madhavan's comments to mean that he attributed Plaintiff's mental and emotional condition to chronic pain.  (TR 20-23).  The ALJ then concluded that Dr. Madhavan's assessment was not consistent with other psychiatric treatment notes in the record, which made references to Plaintiff's physical condition but which primarily focused on Plaintiff's concerns related to her personal problems and living situation. Eastwood Clinic treatment notes as a whole assess Plaintiff's mental and emotional condition in relation to her situation with her husband, neighbors, finances, children, her children's father, and

16

her home, with very little reference made to her physical symptoms.  (TR 421-69).  Based on this inconsistency, the ALJ attributed only limited weight to the conclusions of Dr. Madhavan.  The ALJ reasonably concluded that Dr. Madhavan attributed Plaintiff's mental and emotional condition to chronic pain and in that respect was inconsistent with other treatment records.  Her decision is supported by substantial evidence. Accordingly, the ALJ's decision to attribute limited weight to Dr. Madhavan's February 28, 2007 opinion is justified based upon the record.

Next, Plaintiff argues that the ALJ ignored the significance of an Eastwood Clinic GAF score of 50, which indicates serious symptoms or a serious impairment in social, occupational, or school functioning, and instead relied upon a GAF found by a one-time examiner.  (Docket no. 11 at 14). Plaintiff also argues in her reply brief that the ALJ ignored an Eastwood Clinic GAF score of 40-45. (Docket no. 18 at 3).

Plaintiff's GAF score of 50 was documented on the March 21, 2005 Eastwood Clinic Intake Assessment Form.  (TR 425).  Plaintiff was subsequently assigned a GAF of 40-45 in a February 2007 Eastwood Clinic Medication Review.  (TR 436).  Indeed, Plaintiff was assigned numerous GAF scores in her Eastwood Clinic Medication Reviews ranging from a high of 50-55 in September 2005 and May 2006 to a low of 40 and 40-45 in July 2005 and February 2007.  (TR 436-45).  The ALJ considered the Eastwood Clinic treatment notes and referenced the GAF score of 50.  (TR 20). Subsequently, the ALJ identified a GAF score of 60 documented in the psychiatric examination report conducted by Dr. Hasan on March 25, 2005.  (TR 241-44).  The ALJ attributed great weight to Dr. Hasan's overall psychiatric assessment, finding that it was consistent with the medical record and Plaintiff's reports to her clinicians that despite her symptoms she was still able to function.  (TR 21).

17

The ALJ cited extensively to the medical records and took into consideration cognitive limitations and diagnoses which were consistent with the Eastwood Clinic treatment notes. (TR 21-23). Although the ALJ did not rely on GAF scores assigned by Eastwood Clinic, she was not obligated to do so. *See Kennedy v. Astrue*, 247 Fed.Appx. 761, 766 (6th Cir.2007) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411 (6th Cir.2006) ("the Commissioner 'has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs' "). Plaintiff's allegation that the ALJ failed to give proper weight to Eastwood Clinic GAF scores is without merit.

**4.     Whether the ALJ Made An Improper Credibility Finding**

Next, Plaintiff argues that the ALJ made an improper credibility finding with regard to Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms. (Docket no. 11 at 17). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.*; *see also* SSR 96-7p; 20 C.F.R. § 404.1529(c). An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In addition to objective medical evidence, when assessing the credibility of an individual's statements the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type,

18

dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir.1994) (applying these factors).

Plaintiff testified at the hearing that her heel spur causes constant daily pain, she keeps her leg elevated, and she spends a lot of time in bed lying down because of her physical symptoms. Plaintiff also testified that she feels stressed from financial problems, problems she has with her estranged husband and neighbors, the challenges of raising young children, and the pressure of handling matters on her own. Plaintiff testified that she felt as if the world was against her after she was robbed by her neighbor. She also testified that while she suffers from depression and anxiety, her emotional problems have improved with psychiatric therapy, medication, and less frequent contact with her husband.

The ALJ reviewed the medical evidence and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms but found that Plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms were not entirely credible. (TR 22). Specifically, the ALJ found that despite Plaintiff's multiple stressors at home and physical pain, the evidence showed that Plaintiff could perform simple, unskilled work, and that Plaintiff's testimony regarding a need to lie down and more than mild mental limits was not supported by the record. (TR 22). The ALJ observed that while Plaintiff complained of knee and back pain and was reported to have a mild back spasm, the radiology report of her knee was normal, she was evaluated as having full muscle strength in all extremities and a range of motion within functional limitations, and she had periods of time when she sought treatment

for other ailments with no complaints of back pain.  The ALJ further noted that Plaintiff declined injection treatment for pain management, opting instead to take Motrin and Tylenol and continue physical therapy, and that she had reported diminished back pain with physical therapy in the past. (TR 20-21).

The ALJ reviewed the record with regard to Plaintiff's complaints of foot pain and found that Plaintiff's physician recommended that she continue with injections and use an ankle brace for an ankle sprain but did not indicate that further limitations were warranted.  (TR 21).  With regard to headaches, the ALJ observed that Plaintiff's CT scan was normal, Plaintiff's medication regimen had stabilized the migraines, and Plaintiff reported that she could still function with the headaches. (TR 21).  The ALJ found with regard to Plaintiff's mental and emotional symptoms that Plaintiff was stressed and depressed and recently separated from her husband, but that she reported that medication was helping to reduce her symptoms and level of anxiety.  (TR 20).  The ALJ observed that despite Plaintiff's depressed mood, treatment notes showed that she was coherent, fluent, cooperative, pleasant, her thought flow was logical, and her motor activity was normal.  (TR 21-22). The ALJ further observed that Plaintiff was able to function and continue her daily activities of caring for her two young children on her own despite her physical and emotional symptoms.

After reviewing the record in full and considering all of Plaintiff's symptoms, the ALJ found that the medical records and the testimony of the Plaintiff revealed that Plaintiff's limitations would not interfere with her ability to function independently, appropriately, effectively, and on a sustained basis.  (TR 19, 22).  Contrary to the Plaintiff's contention, the ALJ reviewed the evidence consistent with 20 C.F.R. § 404.1529(c) and provided sufficient reasons for finding that Plaintiff's testimony regarding the limiting effects of her condition was not entirely credible.  Accordingly, Plaintiff's

20

claim that the ALJ made an improper credibility determination should be denied.

**5.** **Whether the ALJ Relied Upon An Incomplete Hypothetical and Ignored Conflicting Testimony From the VE, Failing to Perform Her Duty Under SSR 00-4p**

Plaintiff contends that the hypothetical the ALJ posed to the VE was incomplete, the VE's responses conflicted with the DOT, and the ALJ failed to verify that the VE's testimony was consistent with the DOT as required by SSR 00-4p. In deciding whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question. *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d at 779. The hypothetical question, however, must accurately describe the claimant's physical and mental impairments. *Id.*

Plaintiff contends that the ALJ's hypothetical was incomplete because it included only mild deficits in concentration, persistence and pace when the medical evidence suggests that Plaintiff's mental limitations are much more severe. Plaintiff points to the opinion of Dr. Madhavan which shows that the Plaintiff had marked limitations in her ability to understand and carry out detailed instructions and complete a normal workday and workweek without interruptions. She also refers to the opinion of the state examiner, Dr. Hasan, who assigned Plaintiff a GAF score of 60 indicating moderate deficiencies.

As discussed above the ALJ permissibly discounted Dr. Madhavan's February 28, 2007 finding which showed marked limitations and was thus not required to include those findings in her hypothetical question. *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). Similarly, as discussed in the preceding section the ALJ thoroughly reviewed the medical evidence, Plaintiff's symptoms, and Plaintiff's testimony and concluded based on substantial

21

evidence that Plaintiff had only mild mental limitations that would not interfere with her ability to function independently, appropriately, effectively, and on a sustained basis.

Evidence supporting the ALJ's decision is substantial if a reasonable mind could accept it as supporting the challenged conclusion, even if evidence is present which could support a different decision. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989). The ALJ in her question to the VE adequately described Plaintiff's condition based on evidence she found credible. Accordingly, the ALJ's hypothetical should not be disturbed. Even if the Court were to conclude that Plaintiff's mental limitations are more than mildly restrictive, however, the hearing transcript shows that the VE confirmed that Plaintiff could perform the proposed jobs even with moderate mental limitations. (TR 510). Based on the above, the Court recommends that the ALJ's hypothetical not be overturned.

Finally, Plaintiff argues that the ALJ ignored conflicting testimony from the VE and failed to ask the VE whether her testimony was consistent with the DOT. Specifically, Plaintiff argues that the VE's proposed jobs all require a light level of exertion which conflicts with the sedentary limitation imposed by the ALJ. Plaintiff contends that not only did the ALJ fail to reconcile this discrepancy, but also failed to ask the VE whether or not her testimony was consistent with the DOT.

SSR 00-4p provides that before an ALJ may rely upon a VE's testimony, the ALJ must address any apparent unresolved conflicts between the jobs identified by the VE and the DOT's classification of those jobs. SSR 00-4p places an affirmative duty upon an ALJ to: (1) ask the VE whether any conflicts exist between the expert's testimony and the DOT, (2) "elicit a reasonable explanation" for any such conflict, and (3) explain the resolution of the conflict. SSR 00-4p.

The hypothetical posed by the ALJ assumed an individual limited to sedentary, simple, unskilled work with mild deficits in concentration, persistence, and pace.  The VE testified that Plaintiff could perform assembly jobs, surveillance monitor, inspector, and hand packager positions. In her decision, the ALJ stated that the VE's testimony was consistent with the DOT and with the Selected Characteristics of Occupations defined in the Revised DOT.  However, there is no evidence in the transcript that the ALJ asked the VE whether her testimony was consistent with the DOT.  In addition, although Defendant argues that the job of surveillance system monitor (No. 379.367-010) requires only sedentary exertion, the VE did not provide DOT codes in her testimony.  Without the DOT codes the Court is unable to verify whether the Defendant identified the correct code for the job the VE testified about.  Accordingly, the ALJ's decision should be vacated and this case remanded for the limited purpose of allowing the ALJ to determine whether the VE's testimony is consistent with the DOT.

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Defendant's Motion for Summary Judgment (docket no. 16) should be denied, and that of Plaintiff's (docket no. 11) granted only to the extent that the ALJ's decision should be vacated and this matter remanded for the limited purpose of allowing the ALJ to determine whether there is a conflict between the VE's testimony and the DOT and to address the issue in compliance with SSR 00-4p.

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 8, 2011                    s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 8, 2011                    s/ Lisa C. Bartlett
                                           Case Manager

24